UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BROWNELL LAND COMPANY, L.L.C. | CIVIL ACTION |
| VERSUS | No. 05-322 |
| APACHE CORPORATION, et al. | SECTION: I / 3 |

### ORDER AND REASONS

This matter is before the Court pursuant to a motion, filed on behalf of defendant, Apache Corporation ("Apache"), seeking dismissal or stay of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Brownell Land Company, L.L.C. ("Brownell"), opposes the motion. For the following reasons, defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

### BACKGROUND

Apache, a lessee, holds leases on plaintiff lessor's property in Assumption Parish, Louisiana.[1] This case arises out of the alleged contamination of plaintiff's property by defendant's oil and gas exploration and production activities. Plaintiff contends that the property was damaged by the improper disposal of oilfield wastes, as well as leaks, spills, and other discharges of hazardous substances from defendant's equipment.[2] Plaintiff alleges that Apache knew or should have known

---

[1]Rec. Doc. 1, exh. A, p.1.

[2]*Id.* at p. 2.

1

that its actions were polluting the property, but it chose instead to ignore the problem, contributing to further contamination.[3] Plaintiff further complains that defendant failed to warn plaintiff of the destructive quality of its actions.[4] Plaintiff's claims include allegations of negligence, nuisance, strict liability, breach of contract, unjust enrichment, and trespass, *inter alia*.[5]

Defendant moves to dismiss plaintiff's claims or, in the alternative, to stay the claims pending determination by state agencies.[6] Defendant presents four main arguments: (1) plaintiff failed to provide defendant with notice of its allegations of improper operation of the leased property as required by Section 136 of the Louisiana Mineral Code; (2) primary jurisdiction for plaintiff's claim lies not with this Court, but with a state agency; (3) plaintiff failed to provide the statutorily required notice to state agencies prior to asserting demands relating to groundwater contamination; and (4) plaintiff's claim for punitive damages fails to allege sufficient facts. Plaintiff's opposition to defendant's motion was timely filed.[7]

## LAW AND ANALYSIS

*I. Standard of Review - Motion to Dismiss for Failure to State a Claim*

A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts

---

[3] *Id.* at 3-4.

[4] *Id.* at 4.

[5] *Id.* at 4-7.

[6] Rec. Doc. 6, pp. 1-2.

[7] Rec. Doc. 12.

in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowry v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

"However, 'in order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted).

*II. Louisiana Mineral Code Section 136 Notice Requirement*

Section 135 of the Louisiana Mineral Code instructs that "[t]he provisions of the Louisiana Civil Code concerning putting in default are applicable to mineral leases subject to the following modifications." La. Rev. Stat. Ann. 31:135. Two later code sections require that, before a lessor

3

may sue a mineral lessee, the lessor must give notice to the lessee. Section 136 states that:

> [i]f a mineral lessor seeks relief from his lessee arising from drainage of the property leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator, he must give his lessee written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease.[8]

La. Rev. Stat. Ann. 31:136.

Defendant argues that plaintiff's claims fall within Section 136 and require written notice prior to any judicial action because they "arise from allegations that Apache failed to prudently operate unspecified leases."[9] Defendant states that plaintiff failed to provide Apache with any notice of its claims and, therefore, Section 136 bars plaintiff's damage claims until plaintiff provides defendant with written notice and an opportunity to perform.[10]

Plaintiff does not state that it provided any notice to defendant prior to filing this lawsuit. Plaintiff argues, however, that prior notice is not required because its claims do not fall within the scope of Section 136. Plaintiff notes that Section 136 requires notice when a lessor's claims address "drainage of the property leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator."[11] Plaintiff states that its damages claims do not relate to drainage or the failure to develop and operate the property; instead, plaintiff argues that its

---

[8] Section 137 also requires lessors to provide written notice to mineral lessees before seeking judicial relief for failure to make timely or proper royalty payments. La. Rev. Stat. Ann. 31:137.

[9] Rec. Doc. 6, p. 4.

[10] *Id.*

[11] Rec. Doc. 12, p. 2.

4

claims are for "restoration and remediation of plaintiff's property."[12] Plaintiff admits, however, that there are "aspects of the plaintiff's claims that relate, factually, to the conduct of a prudent operator."[13]

In support of its arguments, plaintiff cites *R.R. Minvielle, L.L.C. v. Shell Oil Co.* No. 04-2504, slip op. (W.D. La. May 5, 2005). In that case, the court similarly considered the alleged contamination of the plaintiff's land by gas and oil exploration activities. The defendants moved to dismiss or stay the action, citing the notice requirement of Section 136, but the court denied the motion. *Id.* at 8. Finding that notice was not required for the plaintiff's claims to proceed, the court wrote that "[b]y its terms, Section 31:136 is limited to certain enumerated kinds of claims." *Id.* at 9. In support of its ruling, the district court explained that the plaintiff was the owner of the contaminated property; in addition, the court postulated that the plaintiff's allegations that the defendants had actively concealed their activities "may vitiate any amicable demand requirement." *Id.* at 9 (citing *Williams v. Humble Oil Refining Co.*, 432 F.2d 165 (5th Cir. 1970)); *see also Simoneaux v. Jolen Operating Co.*, 2004 U.S. Dist. LEXIS 25668, at *18-19 (E.D. La. Dec. 15, 2004) (Wilkinson, Mag.) (finding that Section 136 is limited to "certain enumerated claims" and denying defendants' motions to dismiss for failure to make amicable demand).

The *Minvielle* court's reliance on *Williams*, however, is somewhat misguided. The official comments to Section 136 expressly note that "[i]t is the intent of Article 136 to overrule the *Williams* case insofar as it relieves the lessor of the necessity to put the lessee in default." La. Rev. Stat. Ann.

---

[12] *Id.* While plaintiff's claims may ultimately benefit the restoration and remediation of plaintiff's property, the Mineral Code does not appear to recognize this distinction.

[13] *Id.*

5

§ 31:136, cmt.; *see also Pierce v. Goldking Properties*, 396 So. 2d 528, 533 (La. App. 3rd 1981). Moreover, nothing in the language of the statute or comments suggests that plaintiff's ownership of the property or allegations of concealment eliminate the notice requirement.

In the initial complaint, plaintiff makes a single reference to the Mineral Code, alleging that "each defendant has breached those standards imposed by the Louisiana Mineral Code which govern the conduct of prudent operators."[14] Plaintiff's complaint fails to allege that it provided Apache with any notice of this claim. Because of this deficiency, even taking all of plaintiff's allegations to be true for the purposes of this motion, this Court cannot find that plaintiff has pleaded facts sufficient to state a Mineral Code claim upon which relief can be granted. Plaintiff's other claims for negligence, strict liability, nuisance, and breach of contract, *inter alia*, are not based on the Mineral Code and do not require any amicable demand.

### III. Primary Jurisdiction

The doctrine of primary jurisdiction applies where "claims properly cognizable in court . . . contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S. Ct. 1213, 1220, 122 L. Ed. 2d 604, 617 (1993). "The doctrine of primary jurisdiction developed by Louisiana jurisprudence is very similar to the Federal doctrine that bears the same name." *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1304 (1994). The Fifth Circuit has held "that Louisiana's doctrine of primary jurisdiction is substantive and it require[s] [a] lower court to exercise its discretion as if it were a Louisiana state court." *Id.* The doctrine "requires the court to enable a

---

[14] Rec. Doc. 1, exh. A, pp. 5-6.

'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter*, 507 U.S. at 260, 113 S. Ct. at 1220, 122 L. Ed. 2d at 617 (footnote omitted). Such referral does not necessarily eliminate the referring court's jurisdiction over the case as the court retains the "discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case." *Id.* See *Mills*, 11 F.3d at 1304 (holding that deferring to the primary jurisdiction of a state agency as to matters within its expertise "is a matter within the sound discretion of the trial court").

Brownell posits that both the Louisiana Office of Conservation ("LOC") and the Louisiana Department of Environmental Quality ("LDEQ") have primary jurisdiction over plaintiff's claims.[15] The Louisiana Supreme Court, however, has definitively ruled that "[p]rivate landowners in Louisiana have no duty to seek relief from an administrative agency before filing suit against an oil company." *Corbello v. Iowa Prod.*, 850 So. 2d 686, 701 (La. 2003). In *Corbello*, the plaintiff sued for damages associated with the defendant oil company's contamination of plaintiff's land. 850 So. 2d at 691. The court determined that the plaintiff had no duty to first bring a claim before the Department of Natural Resources. The Supreme Court reasoned that, "if landowners cannot sue for cleanup costs–especially where, as here, they have a contract in hand–it would leave only understaffed and underfunded state agencies to oppose the oil companies." *Id.* at 701.

In addition, "[d]amages from soil pollution are within the conventional knowledge and expertise of a trier of fact." *Magnolia Coal Terminal v. Phillips Oil Co.*, 576 So. 2d 475, 484 (La. 1991). There is no concern that, by retaining jurisdiction over the case, defendant's claims will be

---

[15]Rec. Doc. 6, pp. 8-9, 11.

unfairly disadvantaged and, thus, no need to refer the case under the primary jurisdiction doctrine.

Defendant also argues that Louisiana law requires plaintiff to exhaust all administrative remedies before applying for any judicial remedy.[16] The doctrine of primary jurisdiction is distinct from the doctrine of exhaustion of administrative remedies, which provides that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter*, 507 U.S. at 269, 113 S. Ct. at 1220, 122 L. Ed. 2d 618. Defendant insists that plaintiff must proceed before the Louisiana Commissioner of Conservation before this Court can hear the case. The Commissioner, however, cannot award the damages that plaintiff seeks. *See Magnolia*, 576 So. 2d at 483 ("Because the commissioner cannot award damages, the question of plaintiff's damages is a matter for the courts.").

Further, defendant's citation to the Louisiana Abandoned Oilfield Waste Site Law does not present any obstacle to plaintiff's claim. Defendant states that the law requires that plaintiff notify the LOC before commencing any action.[17] This law only applies, however, "when 'no financially responsible owner or operator . . . can be located, or such person has failed or refused to undertake actions ordered by the commissioner.'" *Magnolia*, 576 So. 2d at 484 (quoting La. Rev. Stat. Ann. 30:75(A)(4)). The statute defines a "financially responsible person" as having "insurance, bonds, or assets sufficient to take action as necessary or as ordered by the commissioner to test, monitor, contain, control, close, and provide post-closure care for an abandoned oilfield waste site owned or operated, in whole or part, by that person." § 30:75(B). There is no dispute that Apache leased

---

[16]*Id.* at 9.

[17]Rec. Doc. 6, p. 10.

plaintiff's property, Apache conducted oil and gas exploration and production, and that Apache has sufficient means to remedy the alleged damages.

Defendant also suggests that *Burford* abstention is appropriate; that is, this Court should refrain from deciding the issues presented out of deference to the state's complex regulatory system. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1442, 87 L. Ed. 1851 (1943) (holding that a district court was correct to abstain from hearing a case involving Texas's system for regulating oil production). Such abstention, however, is limited to equity actions. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731, 116 S. Ct. 1712, 1729, 135 L. Ed. 2d 1, 22 (analyzing the reach of *Burford* and holding that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary") *quoted in Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 n.5 (5th Cir. 1999). Thus, any *Burford* abstention is inappropriate as to plaintiff's claims for damages.

Plaintiff does include two equitable demands in its complaint, seeking an injunction that will require defendants to remove any contamination they have deposited, as well as specific performance of defendant's contractual obligations to restore plaintiff's property.[18] Courts analyzing *Burford* abstention in cases presenting mixed questions of law and equity have bifurcated the application of the doctrine. *See In re MetLife Demutualization Litig.*, 156 F. Supp. 2d 254, 265 (D.N.Y. 2001) ("In cases which present mixed questions of equity and law, claims for damages may 'remain in federal court while claims for equitable relief are dismissed entirely.'") (quoting *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 727 (4th Cir. 1999)).

---

[18]Rec. Doc. 1, exh. A, p. 7.

9

*Burford* abstention, however, represents "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S. Ct. 1060, 1063, 3 L. Ed. 2d 1163, 1166 (1959). This case does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483, 496 (1976). There is little concern here that this Court's decision could present any substantial impediment to Louisiana's autonomy. Therefore, there is no need for this Court to defer jurisdiction under *Burford* for plaintiff's equitable claims.

### III. Ground Water Statute

Defendant argues that plaintiff's claims regarding ground water contamination make them subject to the notice requirements of § 30:2015.1 of the Louisiana Revised Statutes.[19] This section provides, in pertinent part, that upon

> making a judicial demand which includes a claim to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, such plaintiff filing same shall provide written notice . . . to the state of Louisiana through both the Department of Natural Resources and the [LDEQ].

La. Rev. Stat. Ann. § 30:2015.1(B) (Supp. 2005). Throughout the complaint, plaintiff alleges damages "resulting from the improper disposal of oilfield wastes directly to water bodies,"[20] that the defendants "knew or should have known that their day to day operations . . . would cause the

---

[19] Rec. Doc. 6, p. 20.

[20] Rec. Doc. 1, exh. A, p. 2.

10

soil, surface waters, and ground waters of plaintiff's property to erode and to be contaminated,"[21] and that "defendants knew for many years that they were disposing . . . toxic poisons and pollutants onto and into the ground, groundwaters, and surface waters"[22] In the complaint, though, plaintiff also specifically denies making any demand for usable ground water contamination that would subject it to Section 2015.1.[23] Any claim for damages relating to usable ground water as defined by Louisiana law would require notification to the LDEQ according to the statute. As plaintiff has not made a claim relating to *usable* ground water, notice of such a claim is not required. See *Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F. Supp. 2d 755, 761 n.19 (W.D. La. 2004) (reading plaintiff's mention of ground water contamination as "merely factual allegations" and holding that "[s]ince plaintiff specifically . . . asserts that it is not seeking damages for contamination or remediation costs for usable ground water, no such damages are recoverable due to the exclusion thereof by the complaint").

IV. Punitive Damages

Finally, defendant argues that plaintiff's claims for punitive damages should be dismissed.[24]

---

[21]*Id.* at 3-4.

[22]*Id.* at 4.

[23]*Id.* at 9. Section 2015.1 defines usable ground water "as any ground water that is a primary drinking water source or is directly connected with a drinking water source (Groundwater Classification I), an agricultural supply, domestic supply or, [sic] any other supply source (Groundwater Classification II)." Loyd J. Bourgeois, Comment, *Private Actions Seeking Remediation or Restoration Damages: Who Ensures the Cleanup Actually Occurs?*, 17 Tul. Envtl. L.J. 355, 382 n.111 (2004).

[24]Rec. Doc. 6, pp. 21-24.

Article 2315.3 of the Louisiana Civil Code provided for exemplary damages "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." This provision was later repealed. Acts 1996, 1st Ex. Sess., No. 2, § 1 (effective Apr. 16, 1996). Insofar as plaintiff claims damages for contamination occurring between the enactment of Article 2315.3 in 1984 and its repeal in 1996, however, its provisions remain applicable. *See Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1236 n.11 (La. 2003) (holding Article 2315.3 applicable to a claim arising in 1994); *see also Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 844 So. 2d 380, 391 (La. App. 3rd 2003) ("The article does not apply to conduct that occurred before 1984.").

In order to successfully plead a claim for punitive damages under this section, however, a party "must plead facts which establish their cause of action during the effective period of article 2315.3. *In re Harvey Term Litig.*, 872 So. 2d 584, 586 (La. App. 4th 2004). Plaintiff's complaint does not specify the dates of the alleged contamination. Instead, plaintiff broadly alleges that "[s]ince at least the 1930s, some or all of the named oil company defendants have known that the disposal of oilfield wastes in unlined earthen pits or directly to waterways inevitably results in seepage which contaminates both surface and subsurface soils and waters."[25] There are no facts that detail the specific dates of plaintiff's ownership of the property or defendant's leases. Further, there are no dates in plaintiff's complaint that suggest that the alleged contamination occurred on the plaintiff's property during the effective period of the statute or that defendant knew of such contamination during such time period. The Court cannot find that plaintiff has stated a sufficient

---

[25]Rec. Doc. 1, exh. A, p. 2.

claim for punitive damages which can withstand a motion to dismiss.

Accordingly,

**IT IS ORDERED** that defendant's motion to dismiss with respect to plaintiff's Mineral Code claim and claim for punitive damages is **GRANTED. IT IS FURTHER ORDERED** that the remainder of Apache's motion to dismiss or, alternately, to stay the remainder of plaintiff Brownell's claims is **DENIED**.

Houston, Texas, October ___6___, 2005.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

13